## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SALVADOR SOTO,

      Plaintiff,

      vs.                            1:22-CV-00740 DHU/LF

ISMAEL TREJO, Executive Director of the
New Mexico Racing Commission, in his individual
capacity; LEASA JOHNSON, Investigator for the
New Mexico Racing Commission, in her individual
capacity; THE BOARD OF STEWARDS OF
RUIDOSO DOWNS, in their individual capacities;
VIOLET SMITH, Steward, in her individual capacity;
THE BOARD OF STEWARDS AT ZIA PARK,
in their individual capacities; and RON WALKER,
Steward, in his individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING  DEFENDANTS' MOTION TO DISMISS

### I.
### Introduction

      This matter is before the Court on Defendants' Motion to Dismiss ("Motion") brought

pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 4.  Plaintiff Salvador Soto ("Plaintiff") is a racehorse

trainer and licensee of the New Mexico Racing Commission ("NMRC") who originally filed this

lawsuit in New Mexico District Court on May 18, 2020. Doc. 1-2 (Amended Compl.) ¶¶ 1, 10.

Not long after amending his complaint in state court to add additional defendants, the case was

removed to federal court by two of the defendants and the Court denied a request by Plaintiff to

remand the action to state court. Doc. 21. In his Amended Complaint, Plaintiff brings claims under

42 U.S.C. § 1983 against the named defendants ("Defendants") in their individual capacities.

Plaintiff's claims are related to three distinct administrative actions by the NMRC: 1) a 2014

disciplinary action brought by the NMRC which resulted in a fine and the suspension of Plaintiff's training license; 2) a 2019 disciplinary action brought by the NMRC which also resulted in a fine and the suspension of Plaintiff's training license; and 3) the 2019 renewal of Plaintiff's training license before the NMRC. *See generally* Doc. 1-2. Plaintiff alleges that Defendants violated his constitutionally protected rights under the Constitution by depriving him of a liberty interest and procedural due process during these three administrative actions. *Id.* at ¶¶ 76–108.

Defendants now move to dismiss all claims brought against them based, for the most part, on absolute and qualified immunity. Doc. 4. The Court held a hearing on Defendants' motion on September 27, 2023. Doc. 25. For the reasons stated below, the Court will GRANT Defendants' motion.

## II.
## Legal Standards

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In adjudicating a Rule 12(b)(6) motion, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [the plaintiff]." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

District courts may grant a motion to dismiss based on qualified immunity, but "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion ... subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Specifically, the court analyzes "the defendant's conduct as alleged in the complaint." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

## III.
## Discussion

### A. Plaintiff's Claims Against the Individual Defendants.

1)  <u>Claims related to the 2014 Disciplinary Action Against Plaintiff.</u>

Plaintiff alleges that in November 2014, a racehorse trained by Plaintiff ran and won a horse race held at Zia Park Racetrack in Hobbs, New Mexico. Doc. 1-2 ¶ 14. After winning the race, the racehorse tested positive for a prohibited substance and the NMRC sought to impose liability for the positive test on Plaintiff under the "Absolute Insurer" rule found in state regulations.  That rule imposes liability on a trainer for the presence of prohibited drugs regardless of the acts of third parties.[1] *Id*. ¶ 17. On September 23, 2016, the NMRC issued a Decision and Order against Plaintiff for the violation, suspending him for three years and imposing a fine of $10,000. *Id*. ¶ 18. Plaintiff appealed the NMRC's decision to a New Mexico state district court and, in May 2017, the state court reversed the order of the NMRC and ordered the dismissal of the proceedings against Plaintiff. *Id*. ¶ 27.

---

[1] *See* 16.47.1.10(B)(1) NMAC.

Plaintiff brings § 1983 claims related to the 2014 disciplinary proceedings which led to the suspension of his license against Defendant Leasa Johnson ("Defendant Johnson"), an investigator for the NMRC, in her individual capacity, and against Defendant Ismael Trejo ("Defendant Trejo"), the Executive Director of the NMRC, also in his individual capacity. *Id.* ¶¶ 30–33. According to Plaintiff, Defendant Johnson was the NMRC investigator assigned to investigate the alleged prohibited substance violation against Plaintiff concerning the racehorse entered in the race at Zia Park. *Id.* ¶ 30. Defendant Johnson testified at the administrative hearing and Plaintiff alleges she "failed to properly investigate the entry of the horse into the race." *Id.* ¶ 31. At the hearing before the Court on Defendants' motion, Plaintiff explained that his claim against the NMRC investigator was that she violated his constitutional right to due process under the Fourteenth Amendment to the Constitution by "asserting [at the administrative hearing] that the jockey's agent [who entered the horse into the race] was acting on behalf of the Plaintiff in order to establish liability under the absolute insurer rule [ ], which led to a finding of [Plaintiff's] liability for the medication violation and imposition of a suspension …." Transcript of 9/27/23 Hearing ("Hr'g. Tr.") at 32.[2] Defendant Johnson "persuaded the hearing officer that the rule at the time was that a trainer, an owner or a jockey agent had authority under the rules to enter a horse into the race, and because the horse was properly entered into the race, plaintiff was responsible under the absolute insurer rule." *Id.* at 31. According to Plaintiff, this statement was, at best, inaccurate, and perhaps just false. *Id.*

As to Defendant Trejo, the Executive Director of the NMRC, Plaintiff alleges that he "failed to consider or present evidence to the NMRC regarding the fact that Plaintiff did not enter

---

[2] This Order cites to the court reporter's unofficial transcript. All page citations are subject to change on the official edited version of the transcript.

or direct anyone to enter the horse into the race in question." Doc. 1-2 ¶ 32.  Plaintiff claims that despite "having the authority to mitigate the damage caused to Plaintiff by issuing a stay of his suspension until the medication violation allegations were resolved, Defendant Trejo did not take such action." *Id*. At the hearing on Defendants' motion, Plaintiff's counsel confirmed that the allegation against Defendant Trejo is that he had the discretion to stay the penalty imposed on Plaintiff but did not look at the evidence regarding the entry of the racehorse closely enough and, if he had, he would have issued a stay of Plaintiff's suspension.  Hr'g. Tr. at 43.

    2)  <u>Claims Related to the 2019 Disciplinary Action Against Plaintiff</u>.

Plaintiff next alleges that on November 18, 2019, the Board of Stewards of Zia Park conducted a disciplinary proceeding against him regarding alleged medication violations by several racehorses he trained. Doc. 1-2 ¶ 48. According to Plaintiff, he was not notified of the hearing and did not have the opportunity to respond to the allegations against him.  *Id*. ¶ 49. After the hearing, the Board of Stewards issued its rulings against Plaintiff, which were signed by Defendant Ron Walker ("Defendant Walker"), a member of the Board of Stewards. *Id*. ¶ 50. As a result of these rulings by the Board of Stewards, Plaintiff's license to train racehorses was suspended for a total of 120 days and he was fined a combined $20,000 for the violations.  *Id*. ¶ 59.

Plaintiff appealed the Board of Steward's rulings to the NMRC and requested a stay of his suspension and fines from Defendant Trejo, which was ultimately denied. *Id*. ¶¶ 62, 63. While the NMRC considered Plaintiff's appeal, Plaintiff filed for an emergency temporary restraining order and preliminary injunction in New Mexico state district court. *Id*. ¶ 69. In March 2020, the state district court temporarily granted Plaintiff's request for a restraining order and preliminary injunction, prohibiting the NMRC from taking any further action against Plaintiff's license. *Id*. ¶

70. In December 2021, the NMRC affirmed the rulings by the Board of Stewards, in part, issuing Plaintiff a $20,000 fine and imposing a 60-day suspension of his license to train racehorses. *Id.* ¶ 73. Four months later, in April 2022, the state district court reversed the decision of the NMRC, finding that the NMRC had failed to notify Plaintiff of the November 2019 disciplinary hearing against him. *Id.* ¶ 75.

Plaintiff now brings § 1983 claims related to the 2019 disciplinary proceeding, which led to the suspension of his license to train racehorses against Defendant Walker, in his individual capacity, and again against Defendant Trejo, also in his individual capacity. *Id.* ¶¶ 30–33. According to Plaintiff, Defendant Walker acknowledged to Plaintiff that the notification of the November 18, 2019, hearing sent to Plaintiff via certified mail was returned to the NMRC undelivered to Plaintiff. *Id.* ¶ 54. Nevertheless, the proceedings were conducted against Plaintiff, in absentia, and resulted in a significant fine and the suspension of Plaintiff's license from November 25, 2019, to March 18, 2020. *Id.* ¶ 60, 72.

Plaintiff's claim against Defendant Trejo is again that he had the discretion to stay the suspension and fines imposed on Plaintiff but did not do so, instead rejecting Plaintiff's request for a stay an hour after it was made, leading to the lengthy suspension of Plaintiff's racehorse training license. *Id.* ¶ 64. Plaintiff seeks damages for the time during the suspension when was prohibited from engaging in his profession. *Id.* ¶¶ 72, 96–99.

3)  <u>Claims Related to the 2019 Renewal of Plaintiff's Racing License.</u>

Plaintiff alleges that on July 31, 2019, his trainer's license expired, and he sought to have it renewed. *Id.* ¶¶ 34, 35. According to Plaintiff, he was informed by the Board of Stewards at the Ruidoso Downs that, pursuant to a New Mexico state regulation,[3] he needed to take and pass a

---

[3] 16.47.1.10(A)(3) NMAC.

trainer's test before his license could be renewed. *Id.* ¶ 36; Hr'g. Tr. at 46. Plaintiff then took the test on August 3, 2019, but did not pass it, resulting in a ruling from the Board of Stewards, signed by Defendant Violet Smith, stating that Plaintiff had failed the test and would not be eligible to retake it until after September 2, 2019. *Id.* ¶ 42. According to Plaintiff, Defendant Smith's interpretation of the regulation was erroneous, because it only applied to trainer's licensed in jurisdictions other than New Mexico. *Id.* ¶ 44. On August 7, 2019, Defendant Trejo and the Board of Stewards, after consultation with the Office of the Attorney General for the State of New Mexico, agreed with Plaintiff and determined that the regulation at issue was wrongfully applied to Plaintiff as a condition for the renewal of his license. *Id.* ¶¶ 45, 46. Plaintiff was allowed to renew his license without having to take and pass a written test. *Id.* ¶ 46.

Plaintiff brings a § 1983 claim against Defendant Violet Smith ("Defendant Smith"), in her individual capacity, alleging that she violated his due process rights and denied him the opportunity to engage in his chosen profession by wrongfully applying an inapplicable rule to Plaintiff when he attempted to renew his license. *Id.* ¶ 47; Hr'g. Tr. at 46. According to Plaintiff, Defendant Smith's actions resulted in Plaintiff being unable to enter horses into races scheduled between August 2-4, 2019, at Ruidoso Downs Racetrack, which resulted in damages to Plaintiff. *Id.*

**B. Defendants' Motion to Dismiss the Claims Brought Against the Individual Defendants.**

Defendants move to dismiss the claims against Defendants Johnson, Trejo, Smith, and Walker, asserting that, as to each of the claims brought under § 1983 against these individual defendants, they enjoy absolute immunity and/or qualified immunity.

1) <u>Defendants Johnson and Trejo Are Not Entitled to Absolute Immunity and the Record Is Insufficient to Determine Whether Defendant Walker Is Entitled to This Immunity.</u>

Defendants argue that, as to the claims brought against Defendant Johnson related to the 2014 disciplinary action against Plaintiff, she is "absolutely immune under the quasi-judicial immunity" acknowledged by both the United States Supreme Court and the Tenth Circuit Court of Appeals. Hr'g. Tr. at 5–6. As to Defendant Trejo, Defendants claim that he too is entitled to absolute immunity if the claims brought against him are that he had a duty or an obligation to consider evidence and failed to do so during the 2014 and 2019 disciplinary actions against Plaintiff. *Id*. at 9. Defendants' assertion of absolute immunity further extends to "the individual Defendants who initiated, prosecuted, and presided over" the 2014 and 2019 administrative actions related to alleged drug violations, which would also include Defendant Walker. Doc. 4 at 6.

Absolute immunity, sometimes referred to as quasi-judicial immunity, "affords complete protection from liability for damages [and] defeats suit at the outset." *Horwitz v. State Bd. Of Medical Examiners of State of Colo*., 822 F.2d 1508 (10th Cir. 1987). In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court extended the doctrine of absolute immunity, long afforded to judges performing acts within their judicial jurisdiction, to federal executive officials engaging in adjudicatory functions. The *Butz* Court determined that when federal executive officials functionally serve in capacities comparable to judges, prosecutors, and jurors, they serve as "quasi-judicial" officers and are absolutely immune from private suits for damages. *Id.* at 513–14. Later, the Supreme Court would further extend and apply the doctrine to federal hearing examiners and administrative law judges. *See Horwitz*, 822 F.2d at 1513 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 106 S. Ct. 496, 88 L.Ed.2d 507 (1985)).

Following *Butz*, the Tenth Circuit Court of Appeals has recognized that,

> [O]fficials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion. For an official at an administrative hearing to be protected by absolute immunity "(a) the officials' functions must

8

> be similar to those involved in the judicial process, (b) the officials'
> actions must be likely to result in damages lawsuits by disappointed
> parties, and (c) there must exist sufficient safeguards in the
> regulatory framework to control unconstitutional conduct.

*Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006) (citing *Butz*, 438 U.S. at 514, 98 S.Ct. 2894; *Horwitz,* 822 F.2d at 1513)). Thus, the Tenth Circuit has expanded the *Butz* rationale to cases involving state administrative/executive officials serving in adjudicative, judicial, or prosecutorial capacities. *See Horwitz*, 822 F.2d at 1515 (citations omitted).

    a.  Defendant Johnson is not entitled to absolute immunity.

In this case, Defendant Johnson was the investigator for the NMRC who, according to Plaintiff, was "assigned to investigate the alleged [2014] medication violation against Plaintiff." Doc. 1-2 ¶ 30. Defendant Johnson testified at the administrative hearing regarding the alleged violation and Plaintiff alleges that during that hearing Defendant Johnson provided inaccurate and possibly false information to the hearing officer concerning the rule about entry of horses into a race. Hr'g. Tr. at 31. In their Motion to Dismiss, Defendants say very little about Defendant Johnson, other than to proclaim broadly that "[b]ecause the administrative actions related to the 2014 [ ] drug violations were quasi-judicial, the individual Defendants who initiated, prosecuted, and presided over them are absolutely immune from suit." Doc. 4 at 6.  In response, Plaintiff argues that Defendant Johnson is not entitled to absolute immunity because her conduct did not involve "participation in the deliberative process and [ ] exercise of independent judgment" which would make her conduct quasi-judicial in nature.  Doc. 11 at 11. In reply, Defendants, counters that even if Defendant Johnson was "merely an investigator (as opposed to administrative prosecutor or hearing officer) in the 2014 drug violation, the Tenth Circuit has found absolute immunity can still be applied to her."  Doc. 15 at 5 (citing *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990)).

The Court agrees with Plaintiff that Defendant Johnson is not entitled to absolute immunity. The parties do not dispute that Defendant Johnson was the public official who investigated the alleged medication violations in 2014, but there is no allegation or support for the contention that she played the part of a prosecutor during the administrative proceedings against Plaintiff. Nor is there any support for the contention that she initiated the proceedings, as both parties agree she was simply assigned to investigate the claim. There is also no credible assertion that she performed any "quasi-judicial" functions during those proceedings, which would be the first factor to consider under the *Guttman* test for determining the applicability of absolute immunity. *See Guttman,* 446 F.3d at 1033. As to the Tenth Circuit's decision in *Snell v. Tunnell*, the Court does not agree that it furthers Defendants' argument here. In that case, the Tenth Circuit affirmed a district court's decision that several social workers and an attorney for the Oklahoma Department of Human Services were not entitled to absolute immunity. *Snell*, 920 F.2d at 675–76. The court found the social workers had participated only in the investigation of child abuse claims brought against the plaintiffs and the attorney had "ventured outside her [official] duties" and thus was not entitled to immunity even though her conduct was quasi-judicial in nature. *Id*. at 694–96. In denying absolute immunity to the agency attorney, the Tenth Circuit likened the situation to a judge's absolute immunity, which could be lost in cases where a judge acted outside his judicial capacity or jurisdiction. The Tenth Circuit explained that, like a judge, "a prosecutor [could] lose absolute immunity when he acts with a complete and clear absence of authority." *Id*. at 694.

Despite the clear differences between the situation in *Snell* and the facts here, Defendants nevertheless ascribe importance to the Tenth Circuit's statement that, "[a]lthough absolute immunity applies to initiating and presenting a prosecution, the Supreme Court has recognized that some duties prior to the initiation of a prosecution are also protected." *Id*. at 693. Defendants rely

on this announcement for their argument that Defendant Johnson, even if she only participated as an investigator in Plaintiff's case, could still be found to enjoy absolute immunity. Doc. 15 at 5. But this argument is questionable, given the very next sentence in *Snell* where the Tenth Circuit explains that, "[p]reparing to initiate a prosecution may necessitate obtaining, reviewing and evaluating evidence; absolute immunity may attach when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." 920 F.2d at 693. Clearly, the *Snell* court was referring to the pre-prosecution activities of *prosecutors*, not investigators, and there is no support in the opinion for the proposition that investigators who perform no quasi-judicial functions can or should be absolutely immune from liability.

> b. Defendant Trejo cannot claim absolute immunity.

The Court also determines that Defendant Trejo is not entitled to absolute immunity under the facts here as to both the 2014 administrative proceedings and the 2019 administrative proceedings brought against Plaintiff. The parties agree that Defendant Trejo did not personally participate in the administrative hearings or in the adjudication of any the allegations brought against Plaintiff. Again, in Defendants' Motion to Dismiss, they very broadly assert that the individual defendants are entitled to absolute immunity because their actions were quasi-judicial in nature, but provide no specific explanation for the assertion that Defendant Trejo is entitled to absolute immunity. Doc. 4 at 6. At the hearing on Defendants' Motion, counsel for Defendant Trejo argued that, to the extent Plaintiff was alleging that Defendant Trejo had a duty or obligation to consider the evidence against Plaintiff and failed to do that, "then that would make him part of this administrative process and he's entitled to absolutely immunity." Hr'g. Tr. at 9. Plaintiff, however, clarified at the hearing that the claim against Defendant Trejo has nothing to do with the administrative hearing itself, but instead is grounded in the allegation that, while acting purely in

a ministerial role, Defendant Trejo should have, but did not, grant a stay of the suspension and penalties imposed upon Plaintiff during the pendency of his appeals. *Id*. at 39.

Defendants have provided no response to that position or explained why Defendant Trejo is entitled to absolute immunity when he did not adjudicate the allegations against Plaintiff in either the 2014 or 2019 proceedings, but instead made the decisions not to stay the penalties or suspensions until these matters could be resolved on appeal. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993) (citations omitted). Here, Defendant Trejo has not met his burden of showing he is entitled to absolute immunity.

> c.   Defendant Walker's claim of absolute immunity cannot be resolved on this record.

Defendants broadly assert that "the individual Defendants who initiated, prosecuted, and presided over" the 2014 and 2019 administrative actions related to alleged drug violations are all entitled to absolute immunity, which would include Defendant Walker, one of the members of the Board of Stewards at Zia Park. Doc. 4 at 6. In his Amended Complaint, Plaintiff alleges that Defendant Walker and the other members of the Board of Stewards conducted an administrative disciplinary proceeding against him on November 18, 2019, regarding alleged drug violations of several racehorses trained by Plaintiff. Doc. 1-2 ¶ 48. Plaintiff argues that he never had the opportunity to respond to the allegations against him as he was not notified of the hearing. *Id*. ¶ 49.

The Court agrees that, if Plaintiff's claim related solely to actions taken by Defendant Walker in his adjudicative capacity as one of the members of the Board of Stewards, he would likely be entitled to absolute immunity given the quasi-judicial nature of the administrative

proceedings. *See Guttman*, 446 F.3d at 1033. However, Plaintiff's claim against Defendant Walker could be read to include actions he took prior to the administrative proceedings when he was not acting in a quasi-judicial capacity. Plaintiff alleges, for instance, that when he confronted the members of the Board of Stewards after discovering that his license had been suspended, Defendant Walker "acknowledged to Plaintiff that the notification of the November 18, 2019 hearing sent to Plaintiff via certified mail was returned to the NMRC undelivered to Plaintiff." *Id.* ¶ 54. From the record currently before the Court, it is not clear whether Plaintiff is claiming that Defendant Walker knew, *prior* to the administrative hearing, that no notice was provided to Plaintiff but nevertheless continued with the hearing and ultimate adjudication against Plaintiff. This type of action may or may not have been related to the quasi-judicial role Defendant Walker played during the administrative hearing, and without further information the Court finds the record is insufficient to analyze Walker's claim of absolute immunity.

2) Notwithstanding the Lack of Absolute Immunity, the Claims Against the Individual Defendants Must Be Dismissed Because Plaintiff Cannot Overcome the Presumption That They Are All Entitled to Qualified Immunity.

Defendants also claim that the individual defendants are entitled to qualified immunity as to the §1983 claims brought against them. "A § 1983 defendant's assertion of qualified immunity is an 'affirmative defense [that] creates a presumption that the defendant is immune from suit.'" *Truman v. Orem City*, 1 F.4th 1227, 1235–36 (10th Cir. 2021) (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020). To overcome the presumption of immunity, a plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct. *Id.* (citation omitted). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–

35 (10th Cir. 2016). A right is shown to be clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Truman*, 1 F.4th at 1235–36 (citation omitted). Although Supreme Court precedent "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (citation omitted).

a. Defendant Johnson is entitled to qualified immunity.

In their Motion, Defendants argue that Defendant Johnson is entitled to qualified immunity because Plaintiff has not alleged that she violated any clearly established law or acted with requisite intent to state a § 1983 claim against her.  Doc. 4 at 4.  Plaintiff responds that, at the time of the alleged violation in 2014, the law was clear—a license issued by the NMRC created a property interest sufficient to invoke the Due Process Clause. Doc. 11 at 14. Moreover, asserts Plaintiff, New Mexico has recognized this property interest and that a horse's jockey, owner, or trainer "has a right to engage in his chosen profession and is entitled to due process of law if he is to be lawfully denied an opportunity to do so."  *Id.* (quoting *State Racing Comm'n v. McManus*, 82 N.M. 108, 112, 476 P.2d 767, 771 (N.M. 1970)). Plaintiff claims that, at the time of the 2014 administrative proceedings against him, the law was clearly established by the NMRC's own rules that the entry of a racehorse into a horse race was only permitted to be made ". . . in the name of the horse's owner and made by the owner, trainer or a licensed designee of the owner or trainer." *Id.* (citing NMAC 15.2.5.8(B)(2) and 15.2.2.8(A)(1)). Plaintiff further argues that "an administrative agency is bound by its own regulations." *Id.* (citing *Narvaez v. N.M. Dep't of Workforce Solutions*, 306 P.3d 513, 516 (N.M. Ct. App. 2013)). According to Plaintiff, the

presentation of evidence by Defendant Johnson to the hearing officer "against the clear language of the rule regarding racehorse entries [was] not merely negligence but deliberate and reckless conduct by Defendant Johnson." *Id*. at 16.  The crux of Plaintiff's claim against Defendant Johnson thus appears to be that she failed to properly investigate the entry of the horse into the race and erroneously testified at the 2014 administrative hearing that a jockey agent could enter a horse into a race.

In reply, Defendants agree that Plaintiff cites to general constitutional principles that are clearly established but disagree that Plaintiff has shown the violation of a clearly established constitutional right in this instance.  Doc. 15 at 6.  Defendants point out that, under Plaintiff's view of what constitutes a violation of "clearly established" law, any violation of an administrative rule would suffice to deny qualified immunity to a state official.  *Id*.

The Court is not persuaded by Plaintiff's argument regarding the liability of Defendant Johnson for the § 1983 claim brought against her.  To overcome Defendant Johnson's defense of qualified immunity, Plaintiff must show or allege not just the existence of a constitutional right, but facts that show Defendant Johnson's actions violated that right and that the law was clearly established at the time of the unlawful conduct.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state actor] that [her] conduct was unlawful in the situation [she] confronted." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (citation omitted).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640,

107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  As the Supreme Court has explained, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12, 142 S. Ct. 9, 11, 211 L. Ed. 2d 170 (2021) (citation and quotation marks omitted).

The Court agrees with Defendants that Plaintiff has, in general, identified that the constitutional right at issue here is his Fourteenth Amendment right to due process.  Doc. 11 at 14. But to meet his burden and overcome the presumption of qualified immunity, Plaintiff must point to a Supreme Court or Tenth Circuit decision which supports his contention that Defendant Johnson violated his due process rights when she incorrectly interpreted an administrative rule at his hearing or failed to properly investigate the entry of a horse into the race at issue.  *See Truman*, 1 F.4th at 1235–36 (citation omitted). Plaintiff has not done so. At the hearing on Defendants' motion, the Court pressed Plaintiff's counsel to identify how Defendant Johnson's alleged conduct violated clearly established law and whether he could reference case law to support this contention. Hr'g. Tr. at 34-35. Plaintiff cited to no cases, but again averred that Defendant Johnson misinterpreted an administrative regulation that was clear at the time and that it was clearly established that an agency is bound by its regulations. *Id.* at 34. The Court finds that Plaintiff's allegations here are insufficient to overcome the presumption of qualified immunity for Defendant Johnson.

b.   Defendant Trejo is entitled to qualified immunity.

For the same reasons as those stated on behalf of Defendant Johnson, Defendants argue that Defendant Trejo is entitled to qualified immunity as to the claims related to both the 2014 and the 2019 administrative proceedings against Plaintiff.  And for the same reasons as those pertaining to Defendant Johnson, the Court finds that Plaintiff has failed to overcome the presumption of

qualified immunity for Defendant Trejo.  Plaintiff's claims against Defendant Trejo are that, as to both the 2014 and 2019 administrative proceedings, he violated Plaintiff's due process rights by failing to thoroughly review the evidence and issue a stay of Plaintiff's fines and/or suspensions until the matters could be resolved on appeal. Doc. 11 at 16. But Plaintiff provides no law establishing that these types of decisions could violate his due process rights. Even if this conduct could have constituted a violation of Plaintiff's due process rights, neither at the hearing on Defendants' Motion or in his written briefing, could Plaintiff identify Tenth Circuit or Supreme Court precedent which would have put Defendant Trejo on notice that his conduct would do so. Defendant Trejo is entitled to qualified immunity as to these allegations.

      c.   Defendant Smith is entitled to qualified immunity.

As described previously, Plaintiff's claim against Defendant Violet Smith is that, as a member of the Board of Stewards at Ruidoso Downs Racetrack, she violated his due process rights and denied him the opportunity to engage in his chosen profession by wrongfully applying an inapplicable rule to Plaintiff when he attempted to renew his license. Doc. 1-2 ¶¶ 34–47; Hr'g. Tr. at 46. More specifically, Plaintiff alleges that Defendant Smith and the Board of Stewards erroneously interpreted a provision in the New Mexico Administrative Code to require that Plaintiff take a "trainer's test" before his license could be renewed, when in fact that rule only applied to trainers licensed outside New Mexico. Doc. 11 at 17. Defendant Smith's erroneous interpretation of the applicable rule resulted in the renewal of Plaintiff's license being delayed and Plaintiff being unable to enter horses into races scheduled between August 2 and August 4, 2019, at Ruidoso Downs Racetrack. Doc. 1-2 ¶ 47. The delay ended when the NMRC, through its Executive Director, reversed the Board of Steward's determination and granted Plaintiff his license without having to take and pass a trainer's test.  Doc. 11 at 18.

Again, Plaintiff cites to the general proposition that a trainer "has a right to engage in his chosen profession and is entitled to due process of law if he is to be lawfully denied an opportunity to do so," Doc. 11 at 17 (citing *McManus*, 82 N.M. at 112, 476 P.2d at 771), but fails to show how his due process rights were violated in this instance. As noted above, there is no dispute that within several days the NMRC granted Plaintiff the renewal of his license and Plaintiff alleges no facts that indicate he was provided the opportunity to address the erroneous decision allegedly made by Defendant Smith. Again, even if Plaintiff did state facts that established a violation of his due process rights, he does not cite to any caselaw which would have put Defendant Smith on notice that the conduct she is alleged to have participated in would violate Plaintiff's constitutional rights. Absent such a showing by Plaintiff, Defendant Smith is also entitled to qualified immunity. *See Holland*, 268 F.3d at 1186.

> d. Defendant Ron Walker is entitled to qualified immunity.

As noted above, the record is not clear, for purposes of absolute immunity, whether Plaintiff is alleging that Defendant Walker violated his due process rights during the time he, as a member of the Board of Stewards of Zia Park, adjudicated the claims against Plaintiff in an administrative hearing or whether Plaintiff is alleging Defendant Walker violated his rights by pressing forward with a hearing even though he knew Plaintiff had not received proper notice. *See supra* Section III.B.1.c. If it is the former, then Defendant Walker would likely be entitled to absolute immunity given the quasi-judicial nature of Defendant Walker's role at the hearing. *See Guttman,* 446 F.3d at 1033. However, unlike the issue of absolute immunity, where the burden is on Defendant Walker to show he is entitled to such immunity, *Fitzsimmons*, 509 U.S. 259 at 269, it is Plaintiff's burden to show that he can overcome the presumption of Defendant Walker's qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("After a defendant

asserts a qualified immunity defense, the burden shifts to the plaintiff" to establish that the defendant's actions "violated a constitutional or statutory right" which "was clearly established at the time of defendant's unlawful conduct"). Even if Plaintiff were alleging that Defendant Walker violated his constitutional or statutory rights through conduct not related to any decision he made or action he took as part of the administrative proceedings against Plaintiff, it is incumbent on Plaintiff to identify not only how Defendant Walker violated his rights, but also cite to Tenth Circuit or Supreme Court precedent that would have made it clear to any reasonable official that such conduct would amount to such a violation. *See Ashcroft*, 536 U.S. at 741. As with the other individual defendants in this case, Plaintiff has failed to do so in his Amended Complaint, in his response to Defendant's motion, and at the hearing on the motion. Plaintiff has therefore not overcome the presumption of qualified immunity enjoyed by Defendant Walker.

### C.  Plaintiff's Claims Against the "Board of Stewards" Are Dismissed.

Defendants argue that the claims against the Board of Stewards at Zia Park and the Board of Stewards at Ruidoso Downs should be dismissed because they are not proper defendants in a § 1983 action.  According to Defendants, this is so because the Board of Stewards are not "persons" for the purposes of that statute. Doc. 4 at 4-5.  The Court agrees with Defendants' position. Section 1983 allows citizens to sue for damages for violations of their constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). Section 1983 provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983 (emphasis added).  Although Section 1983 is a "remedial vehicle for raising …
[a] violation of constitutional rights," *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016),
it only creates liability where the plaintiff suffers a "deprivation of any rights, privileges, or
immunities, secured by the Constitution" that was caused by a "person" who was acting under the
color of law. *See McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir.  2000) ("A cause
of action under section 1983 requires the deprivation of a civil right by a 'person' acting under
color of state law."). Therefore, to survive a motion to dismiss, a plaintiff must allege that an
individual official violated the plaintiff's civil rights through that individual official's actions. *See
Blackburn v. Dep't of Corr.,* No. 98-2182, 1999 U.S. App. LEXIS 3035, at *2 (10th Cir. Feb. 25,
1999); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68–69, 137 L. Ed. 2d 170,
117 S. Ct. 1055 (1997).

Here, Plaintiff has not shown that the Board of Stewards for either Zia Park or Ruidoso
Downs are entities suable under § 1983.[4] Plaintiff appears to concede this, stating in response to
Defendants' motion that the Board of Stewards at Ruidoso Downs and Zia Park are each comprised
of three individuals, and it is those individuals who are being sued in their individual capacities.
Doc. 11 at 11. Plaintiff, however, only names two stewards, Defendant Smith and Defendant
Walker, as individual defendants in this case. To the extent Plaintiff maintains § 1983 claims
against any other steward, he was required to identify those individuals and state the actions they
alleged took which would make them liable to Plaintiff.  *See Wilson v. Montano*, 715 F.3d 847,
852 (10th Cir. 2013) ("In the context of a § 1983 action against multiple individual governmental
actors, it is particularly important ... that the complaint make clear exactly who is alleged to have

---

[4] The Supreme Court has held that municipalities and local governments are "persons" subject to
suit under § 1983, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98
S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978), but the Board of Stewards are not similar entities.

done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her.") (internal quotation marks omitted).  The § 1983 claims against the Board of Stewards as entities must be dismissed.

## IV.
### Conclusion

For the reasons stated above, the Court finds that each of the individual defendants in this matter are entitled to qualified immunity and that the claims against the Board of Stewards of Zia Park and the Ruidoso Downs must be dismissed.

Defendant's Motion to Dismiss (Doc. 4) is therefore **GRANTED**.

**IT IS SO ORDERED**.

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE